**Larry L. Linder, OSB #010724**
llinder@salememploymentlawyer.com
The Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
Tel: (503)585-1804
Fax: (503)585-1834
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LEE KOCH,** | Case No._____ |
| Plaintiff, | COMPLAINT – Violation Of 42 U.S.C 1983; Violation of Whistleblowing Laws (ORS 659A.199, 659A.203, 659A.218, 659A.230); Violation of ORS 659A.030(1)(f);Violation of ORS 659A.030(1)(g); Intentional Infliction of Emotional Distress; Defamation; Intentional Interference With Economic Relations; Public Disclosure Of Private Facts; and False Light |
| vs. | |
| **CITY OF ST. PAUL**, an Oregon Municipal Corporation, **KIMBER WALLIS**, an Individual, and **LAURA SCHROEDER**, an Individual, | |
| Defendants. | (Jury Trial Demand) |

Plaintiff alleges:

## JURISDICTION AND VENUE

1.

Jurisdiction is conferred upon this Court by both 28 U.S.C. § 1331, as it is brought pursuant to claims under 42 U.S.C. § 1983. All conditions precedent to the institution of this lawsuit have been met. Plaintiff timely filed tort claim notices for claims subject to that requirement. Plaintiff requests a jury trial in this matter.

///

///

Page 1—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

## SUPPLEMENTAL JURISDICTION

2.

This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3.

Venue is appropriate in this Court pursuant to 28 USC § 1391, because the events giving rise to this complaint occurred in Marion County, Oregon. Plaintiff requests a jury trial in this matter.

## PARTIES

4.

Lee Koch ("Plaintiff") is a resident of Marion County, Oregon. Defendant, Kimber Wallis ("Wallis"), has, at all relevant times, been the mayor of St. Paul, Oregon. Defendant, City of St. Paul ("St. Paul"), is a municipal corporation located in St. Paul, Oregon. Defendant, Laura Schroeder ("Schroeder"), has at relevant times been performing the role of St. Paul's city attorney per contract signed on or about December 10, 2015.

## FACTUAL ALLEGATIONS

5.

Plaintiff was hired by St. Paul in the position of Public Works Technician on or about April 1, 2004. Plaintiff left his employment from September 20, 2007 to May 24, 2013. Plaintiff was rehired by St. Paul on or about May 25, 2013. At all relevant times, St. Paul only had two or three employees. In St. Paul's charter, employees are only to be supervised by the full city

Page 2—Complaint

council. The charter also states that the mayor has no supervisory or disciplinary duties over employees.

6.

Wallis became St. Paul's mayor in or about January 2015 and has maintained that elected position since that time. Schroeder became St. Paul's city attorney in or about December 2015 and has maintained that position since that time.

7.

Plaintiff made whistleblowing complaints and disclosures, and/or speech on matters of public concern, which include, but are not limited to:

a) On or about November 12, 2014, Plaintiff complained to the council that mayor elect Wallis was running up legal fees prior to being sworn in and that were not authorized under the city Charter.  Plaintiff regularly complained about Wallis authorizing legal fees throughout Wallis' tenure;

b) On or about January 8, 2015, Plaintiff told Wallis that he was not authorized to make unilateral decisions on city projects without a full council decision;

c) On or about March 17, 2015, Plaintiff and his co-worker, Lorrie Biggs ("Biggs"), filed a grievance against the City Council and Wallis alleging sexual harassment, general harassment, bullying, illegal spending, and violations of general city charter powers;

d) Throughout Wallis' tenure as mayor, Plaintiff repeatedly disclosed, reported, and complained that Wallis spent St. Paul's money when he had no spending authority;

e) Throughout Wallis' tenure as mayor, Plaintiff repeatedly disclosed, reported, and complained that Wallis was acting outside of, in violation of, and in contradiction to St. Paul's Charter;

f) On or about June 27, 2015, Plaintiff issued a water restriction notice during Rodeo week

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

due to problems with St. Paul's wells, but Wallis refused to allow it to be issued and re-wrote it;

g) On or about September 15, 2015, Plaintiff complained to the City Council about Wallis' continued harassment and retaliation requesting that the city council take action;

h) Beginning in 2015, and continuing throughout Plaintiff's employment, Plaintiff recommended to the City Council that St. Paul not acquire the Rodeo Association well due to high arsenic levels;

i) On or about November 12, 2015, Plaintiff and Biggs complained at a staff meeting about Wallis' harassment and retaliation. Councilors Rosemary Koch and Jenni LaFevre, who were present at the meeting, stated they did not want to hear it because they did not know how to stop it;

j) On or about February 11, 2016, Plaintiff sent an email complaint to the City Council asking them to authorize Schroeder to investigate Wallis' illegal spending;

k) On or about February 24, 2016, there was finally a staff grievance hearing from the March 17, 2015 grievance. Plaintiff and Biggs provided the City Council with the original grievance document and examples to support their grievance. Plaintiff and Biggs complained, both before and after this hearing, that St. Paul was not following its own policies and procedures on handling the grievance;

l) Beginning on or about March 22, 2016, and continuing until September 2017, Plaintiff repeatedly brought up a report by structural engineers calling into question the city hall's structural integrity and needed repairs. When Plaintiff brought up these concerns, the City Council would change the subject or minimize the safety issues;

m) Beginning on or about March 25, 2016, Plaintiff began expressing his concerns over the city sewer lagoon and DEQ mandated cleaning and testing that must be completed by

Page 4—Complaint

2020, as the project will take approximately three years. When Plaintiff addressed this, it was tabled by the City Council due to financial concerns;

n) On or about May 2, 2016, Wallis posted on his "Community" Facebook page he established that staff said they had not received any water complaints lately and told the public to email him with concerns. Plaintiff told Wallis that was not the city's policy and procedure for making complaints;

o) On or about May 3, 2016, Plaintiff sent another email complaint to the City Council about Wallis' Facebook posts and hostility Wallis was creating by making false statements to the public about official city business;

p) On or about May 12, 2016, Wallis presented his "fix" to the city's water system issues at a council meeting. Plaintiff disclosed to Wallis that his "fix" would not be legal and would not be approved by the Oregon Health Authority;

q) On or about October 18, 2016, Plaintiff and Biggs requested a City Council meeting to resolve their grievance from March 2015. They also complained to the Council that Wallis and Schroeder were engaging in negative and false public statements about them and conducting employee reviews in meetings that were unauthorized and needed to stop;

r) In or about November 2016, Plaintiff was interviewed by KPTV 12 and disclosed what he believe to be violations of law, rule, policies, and/or the charter by St. Paul with regards to its wells;

s) On or about December 28, 2016, Plaintiff was told by Schroeder to turn over the official audio recording from a City Council meeting that he made on the city's recorder. Schroeder's expressed purpose for this request was so that it could be copied and erased off the city's recorder as Wallis claimed Plaintiff recorded an executive session. Plaintiff responded he did not record the executive session and could not turn it over as it was a

Page 5—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

public meeting. Schroeder threatened Plaintiff with consequences if he did not turn it over. Plaintiff reported to the League of Oregon Cities' attorney what Schroeder was attempting to do and was told to have her contact the attorney. Plaintiff told Schroeder to call him;

t)  On multiple occasions, including in or around February 2017, Plaintiff and Biggs complained to the City Council about Wallis having Schroeder engage in legal services that he was not authorized to have her engage in;

u)  On or about April 27, 2017, Plaintiff reported that a pump at the sewer plant burned up due to Councilor Dolan's company using an undersized overload; and

u)  In or about September 2017, Plaintiff met with an investigator and reported sexually harassing conduct that Biggs had been subjected to.

8.

In response to the whistleblowing activities and/or protected speech engaged in by Plaintiff, Plaintiff suffered retaliation, which includes, but is not limited to:

a)  On or about July 10, 2013, then Mayor Steve Manners and Councilor Charlie Bernards hired Schneider Equipment, Inc., the owner of which is Bernards cousin, to do work on St. Paul's main drinking water well, and thus acted outside of their authority without consulting city staff or getting approval from the City Council. This work was supposed to be done during winter months due to seasonal water demands. This work has caused more than $100,000 of unbudgeted money to be spent and the filtration to be taken off line for the last four years due to the well collapsing and sand from it filling and destroying filters. Plaintiff has been blamed and continues to be blamed for this expenditure in public meetings, on Facebook, and in the local newspaper;

b)  On or about January 8, 2015, Wallis told St. Paul's two employees, Plaintiff and Biggs,

Page 6—Complaint

that "you are going to have a problem if you don't listen to me" in response to them telling him he cannot make unilateral decisions about city projects including the new city well project he started without a full Council decision;

c) After staff filed an employee grievance on or about March 17, 2015, Wallis independently decided he was not going to follow the city's policies on procedures in responding to the grievance thus making the process a sham;

d) On or about March 19, 2015, Wallis sent an email to Plaintiff and Biggs stating that they could withdraw their complaint;

e) On or about March 24, 2015, Wallis held a work session with the City Council that was supposed to be regarding council rules but turned out to be about a new employee manual he wrote with almost nineteen pages on employee discipline;

f) On or about April 27, 2015, the then city attorney, John Rankin ("Rankin"), sent an email to Plaintiff and Biggs regarding their grievance that started off by reminding them they were at will employees and can leave any time they choose;

g) In 2015, Nancy McDonald ("McDonald") wrote a report to St. Paul regarding findings the City Council needed to correct and implement immediately regarding the work environment, but they still have not been done;

h) On or about June 10, 2015, Wallis requested and received an opinion from the Oregon Government Ethics Commission on Plaintiff's relationship with his aunt, Councilor Rosemary Koch. When the commission did not find an ethics concern, Wallis challenged their finding and continued to do so through October 2017;

i) Wallis continually mislead the public regarding Plaintiff's wages causing them to believe that Plaintiff was paid more money than he was;

j) On or about June 24, 2015 the Newberg Graphic quoted Wallis about the ethics

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

complaint issue regarding Plaintiff's aunt causing many in the community to believe Plaintiff was receiving special favors from Councilor Koch infuriating them and leading to many community members making negative statements about Plaintiff on Wallis' "Community" Facebook page and in public meetings. Wallis also stated that there was no merit to Plaintiff and Bigg's grievance, even though it was unresolved;

k) On or about June 26, 2015, Wallis filed an OSHA complaint against Plaintiff and Biggs. The only issue found by OSHA was that staff were not holding monthly safety meetings. Staff had not been trained or instructed to do so. Shortly thereafter, Wallis was quoted in the Newberg Graphic regarding his OSHA complaint placing Plaintiff in a negative light;

l) On or about June 27, 2015, after Plaintiff attempted to issue a water restriction, Wallis re-wrote the restriction even though he had no authority to do so. Wallis told the community that Plaintiff did not know how to do his job.  Wallis repeatedly, and until Plaintiff's resignation, told the City Council and the community that Plaintiff did not know how to do his job;

m) On or about July 1, 2015, the city council refused to do a staff review for Plaintiff thus denying him a raise opportunity and budgeted retirement benefits in violation of the employee handbook policy;

n) On or about August 11, 2015, Wallis sent an email stating city staff could no longer attend executive sessions. Wallis had no authority under the Charter to make this decision. Staff had always been allowed to attend sessions unless it involved issues about them. Removing staff from the executive session causes them to not have necessary information to do their jobs as there is no recording of the executive sessions;

o) Wallis was quoted in the Newberg Graphic that Plaintiff and Biggs were responsible for the resignation of then city attorney, Rankin, creating public ridicule of Plaintiff;

Page 8—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

p) On or about September 16, 2015, Councilor Joel Halter sent an email to Plaintiff stating he knew Wallis was overstepping his authority and wanted more details about Plaintiff's complaints about Wallis. Plaintiff complied, but the only response he received from City Council was "what do we do?";

q) On or about September 23, 2015, Wallis was quoted in the Newberg Graphic giving misstatements about the city well issues and blaming Plaintiff and other staff's inability to do their jobs for the well issues;

r) On or about September 30, 2015, St. Paul authorized $20,000.00 for the purchase of a different work truck for Plaintiff. The truck that was purchased cost $4,200. Wallis made posts on his "Community" Facebook page that the city paid $20,000, causing criticism directed at Plaintiff from the public;

s) On or about October 19, 2015, Wallis again published on his "Community" Facebook page that Plaintiff was not doing his job correctly. Per the charter, Wallis has no supervisory authority over Plaintiff, but his posts gave the appearance that he did;

t) Wallis wanted to acquire a well for the city from the Rodeo Association rather than drill a new well for the city. On or about October 21, 2015, Wallis invited the Rodeo Association and others to the council meeting. At the meeting, those present attempted to bully Plaintiff over the recommendation that they not acquire the Rodeo Association well due to high arsenic levels, time to bring the well online, and lack of water produced;

u) On or about October 21, 2015, Wallis was quoted in the Newberg Graphic blaming Plaintiff for replacing the city attorney and hiring a candidate that he did not want;

v) On or about October 21, 2015, Wallis posted on his "Community" Facebook page Plaintiff's alleged wages stating they were approximately 25% higher than they were and misstating his benefits leading to Plaintiff's public ridicule and scorn;

Page 9—Complaint

w) On or about October 30, 2015, Wallis sent an email to Plaintiff stating he was not reading customer meters. The statement was untrue. Wallis posted on Facebook that he confirmed Plaintiff was not reading the meter;

x) On or about November 3, 2015, Wallis sent an email telling staff they were excluded from the process for hiring a new city attorney. Previously, staff had been involved in all contractor hiring doing pre-screenings for council;

y) On or about November 12, 2015, Plaintiff asked Wallis when they would resolve the staff grievance but was told that St. Paul had more important business. This was a consistent message through October 2017;

z) On or about December 2, 2015, Wallis berated Plaintiff and Biggs for spending, in his view, unauthorized funds for the St. Paul's annual Christmas party, which was a routine event. Wallis expressed this view on his "Community" Facebook page causing the public to become irate at Plaintiff;

aa) On or about December 9, 2015, Wallis posted on his "Community" Facebook page that employees had no timesheet or timeclock accountability causing community members to berate them. His statements were untrue. He also posted on Facebook that the staff grievance was the reason the city attorney's bills were so high leading to the community berating them again. He continued to make statements to the public that the attorney bills were so high due to the staff grievances and staff issues through October 2017;

bb) On or about February 10, 2016, Wallis attacked staff on his "Community" Facebook page stating they have no supervision or accountability. He proposed the community to allow him to become a strong mayor to remedy this. This again led to the community berating the staff;

cc) On or about March 9, 2016, there was a meeting about the staff grievance with the City

Page 10—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

Council in executive session. Wallis provided a long rebuttal and defended every charge. This is the last executive session Plaintiff was allowed to attend. The executive sessions since that date have allegedly been about staff issues so Plaintiff is not allowed to attend;

dd) On or about March 26, 2016, Plaintiff emailed Councilor Koch his actual wages and benefits, which she posted on Wallis' "Community" Facebook page as he continued to mislead the public regarding staff wages. Staff were then accused by the community of calling Wallis a liar;

ee) On or about April 20, 2016, Wallis sent the City Council alleged "rules" he created that were mostly employee discipline rules and an attempt to give him authority not authorized by St. Paul's charter;

ff) On or about May 2, 2016, Wallis posted on his "Community" Facebook page that staff say they have not received any water complaints lately and told the public to email him with complaints. Plaintiff responded that was not proper protocol and that they should email, call, or stop at the office to fill out a complaint form. Plaintiff was attacked by Wallis and others, stating Plaintiff was not doing his job;

gg) On or about May 3, 2016, Plaintiff was approved to start a public works Facebook page that would be used for emergency information, flushing water lines updates, boil notices, and general public works alerts as needed. On or about May 6, 2016, Wallis sent an email demanding Plaintiff remove the page;

hh) Wallis blocked Plaintiff from his "Community" Facebook page;

ii) On or about July 1, 2016, another budget year started. The City Council again would not give staff reviews, raise opportunities or retirement in violation of the city employee handbook;

jj) On or about July 14, 2016, the City Council held an executive session on Plaintiff's

Page 11—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

worker's compensation stress claim. Plaintiff asked to be present since they would be talking about his medical issue, but Schroeder refused;

kk) On or about July 22, 2016, Wallis posted on his Facebook page the cost of a new city door Plaintiff and Biggs were purchasing. The door was approved by the City Council. The post caused the community to attack staff over the cost that the City Council approved. Staff still are attacked by the community regarding this;

ll) On or about August 10, 2016, Wallis posted on Facebook that his page is an open community forum and anyone can join, but he blocked city staff from the page;

mm) On or about August 10, 2016, Plaintiff received an email from Schroeder telling him staff were not allowed in executive sessions. This decision required that any grievance discussion take place in a public meeting;

nn) On or about August 11, 2016, Plaintiff and Biggs, while attending a city council meeting, were berated by several members of the community, school officials, and members of the city council that permits had not been issued to the school for construction. Wallis blamed the staff for the delay in the school permits being issued and told the public that the plans were sitting on the city engineer's desk. This was a false statement as Marion County had not issued the permits due to the school's failure to remedy engineer issues related to city building policies. Schroeder stated she would call the county to determine if staff were telling the truth. She failed to do so;

oo) On or about August 17, 2016, Plaintiff emailed Schroeder telling her they needed a telephone meeting with the city engineer regarding the school permit issue as there was a Newberg Graphic article berating city staff for the problem with the school permit;

pp) On or about August 19, 2016, Marion County finally issued and delivered the permits. Plaintiff called the school and they paid for them and the permits were released to them

Page 12—Complaint

the same day. Wallis posted on his "Community" Facebook page that staff had finally released the permits and staff were berated again with statements being made that they should be fired;

qq) On or about September 7, 2016, Wallis posted on his "Community" Facebook page stating he continued to pursue and Oregon Government Ethics Commission decision regarding staff's prior wage and benefit increases claiming staff used council as a rubber stamp;

rr) On or about September 23, 2016, Wallis posted on his "Community" Facebook page that staff were not following through on gathering information to fix the well issue regarding whether to drill a new well for the city or acquire the Rodeo Association well with low water output and high arsenic levels. His statement was untrue, as the staff were following through, but he did not like the information being provided. This caused the community to continue to blame Plaintiff for the water supply issues and post pictures of bad water. This continued until October 2017, and Wallis blamed the issue on staff incompetency;

ss) On or about October 6, 2016, Wallis again posted on Facebook telling the community if they have water or other city issues to contact him directly at his home or email him, not staff, as they are not following through on issues;

tt) On or about October 18, 2016, Plaintiff and Biggs requested city council to have a meeting to resolve the March 2015 grievance. Wallis again stated the city had more important business to attend to;

uu) On or about October 18, 2016, KPTV 12 attended a council meeting. After KPTV 12 left the meeting, Wallis again produced his water quality action plan of acquiring the Rodeo Association well. Plaintiff went on record explaining that the plan would not work and

Page 13—Complaint

they needed to listen to staff as the recommendations come from city engineers and city hydrologists and met state and federal standards. Plaintiff stated the City Council had wasted thousands of public funds. Plaintiff was verbally attacked by Wallis and the community for his statements which led to Plaintiff leaving the meeting;

vv) Against Wallis' wishes, Plaintiff did an interview with KPTV 12 explaining what the real issues are with St. Paul's water supply and Wallis' proposed fixes as Wallis was blaming Plaintiff for the water issues. The interview was aired on or about November 15, 2016. In response, Wallis posted incorrect negative statements about Plaintiff on his "Community" Facebook page causing the community to believe that Plaintiff was lying;

ww)    On or about November 21, 2016, Wallis had a meeting with Mike Dolan, Bill Post, James Labar (the governor's office liaison), and Michelle Billberry where he blamed staff and specifically Plaintiff for his incompetence with the water system;

xx) On or about November 23, 2016, Wallis posted on Facebook reporting about his meeting and stating he was bringing in people to fix the water issues as Plaintiff was not qualified;

yy) On or about December 28, 2016, Schroeder told Plaintiff to give her the city recorder that contained a council meeting recording Plaintiff taped so her staff could erase if off St. Paul's recorder, claiming the executive session was recorded. Plaintiff was not even present for the executive session, but in the public session there were inflammatory statements made. When Plaintiff responded to Schroeder that he could not do that as it was a public meeting, she then called Plaintiff and told him he needed to listen to her or there would be consequences. Plaintiff reached out to third parties to verify his refusal was legal and appropriate and then told Schroeder she could contact the third parties to verify. Schroeder responded with a reply stating she would get back to Plaintiff after she consulted with the council about his actions;

Page 14—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

zz) On or about January 6, 2017, Wallis sent an email stating that Schroeder instructed Plaintiff that he was no longer allowed to sit at the council table during meetings, which he had done since May 2013;

aaa) On or about February 7, 2017, Councilor Koch came into the city office and told Plaintiff she knew he was under extreme stress from Wallis, but could not fix it. Plaintiff asked her to go to CIS, St. Paul's insurance provider, for help. She said she could not do that at the instruction of Schroeder;

bbb) On or about February 17, 2017, Councilor Waldo told Plaintiff that he needed to get an attorney, because Wallis will never stop and it is too messy for Waldo to remedy;

ccc) On or about March 23, 2017, in a council meeting, Plaintiff was attacked by both Wallis and Schroeder telling him how wrong he was about city protocols in public works standards and protocols about a memorandum of understanding with the Rodeo Association regarding their well;

ddd) On or about June 27, 2017, Councilor Koch stated that Councilor Dolan had reconciled the Schroeder bills and that Plaintiff and Biggs were responsible for 95% of them. Plaintiff contacted Councilor Waldo stating he was overwhelmed and needed some time off work, which was approved through workers' compensation;

eee) On or about June 28, 2017, Plaintiff sent an email to Councilors Koch and Waldo on behalf of Plaintiff and Biggs stating they could not take the abuse any longer and asked for help. Waldo replied that Plaintiff would need a doctor's note to return to work. Plaintiff had only missed two days of work and said he planned on being at work the following day, but was told "no." The employee handbook stated a note is required if he missed three days or more of work. Plaintiff missed work the entire rodeo weekend due to this;

Page 15—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

fff) On or about June 30, 2017, a resident posted on Wallis' "Community" Facebook page that she heard Plaintiff took the rodeo week off. Wallis responded by posting on Facebook that Plaintiff was on sick leave due to stress. His post caused the community to berate Plaintiff about trying to hurt St. Paul at rodeo time;

ggg) On or about July 1, 2017, St. Paul's new budget year started. The city council again denied Plaintiff an employee review, wage increase reviews, or retirement benefits. Wallis stated that due to the staff's pending discrimination litigation, Schroeder advised against reviews;

hhh) On or about July 4, 2017, Wallis posted on his "Community" Facebook page that there would be a special City Council meeting the following day to discuss staff leave. This caused the community to make hostile postings and attack Plaintiff for leaving the city in trouble on rodeo week;

iii) On or about July 13, 2017, a Newberg Graphic article was published where Wallis was quoted stating that staff left the city in a bind during rodeo week, and that Plaintiff complained about stress;

jjj) On or about July 21, 2017, a Newberg Graphic article was published where Wallis was quoted blaming and bashing staff even more with false allegations;

kkk) On or about August 10, 2017, Wallis harassed Plaintiff during a City Council meeting over his relationship with Councilor Koch;

lll) On or about August 25, 2017, Plaintiff received an email from Schroeder stating there was a new city policy that all public records were to go through her;

mmm) On or about September 22, 2017, Councilor Koch was notified by Schroeder that she needed to keep a log of her staff interactions and, if she went into the city office, an explanation of why she needed to go there. Schroeder also instructed the City Council to

Page 16—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (f) (503)585-1834
info@salememploymentlawyer.com

travel in pairs when going to the city office where staff work;

nnn)     On or about October 19, 2017, there was a special City Council meeting about Plaintiff's leave of absence. Wallis told the public that Plaintiff was making more money per hour than what he actually earned;

ooo)     On or about November 28, 2017, Plaintiff was constructively discharged from his employment; and

ppp)     At the time of the constructive discharge, the March 2015 grievance was still unresolved.

## FIRST CLAIM AGAINST ST. PAUL:  VIOLATION OF WHISTLEBLOWING LAWS

### (Count I—Violation of ORS 659A.199)

9.

Plaintiff re-alleges paragraph 1-9. According to ORS 659A.199, "It is an unlawful employment practice for an employer to discharge, demote, suspend, or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

10.

St. Paul is an employer pursuant to ORS 659A.199.

11.

Plaintiff made complaints as alleged above that Plaintiff reasonably believed were evidence of violations of state or federal law, rule or regulation.

///

Page 17—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

12.

Plaintiff was retaliated against for engaging in this protected activity as alleged above. The actions of St. Paul constitute a violation of ORS 659A.199.

13.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiff's personal dignity and right to be free from discrimination or interference with Plaintiff's statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

14.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

15.

Plaintiff is entitled to equitable relief including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

16.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.199.

17.

As a result of St. Paul's violations of ORS 659A.199, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount

Page 18—Complaint

awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

18.

Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

### (Count II–Violation of 659A.203)

19.

Plaintiff realleges paragraphs 1-18. According to ORS 659A.203(1)(b), "it is an unlawful employment practice for any public employer to prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of a violation of any federal or state law, rule or regulations by the state, agency or political subdivision" or "mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision." According to ORS 659A.203(1)(d), it is also an unlawful employment practice to "discourage, restrain, dissuade, coerce, prevent or otherwise interfere with disclosure or discussions described in this section." ORS 659A.203(2) continues, "No public employer shall invoke or impose any disciplinary action against an employee for employee activity described in subsection (1) of this section or ORS 659A.212."

20.

St. Paul is a public employer pursuant to ORS 659A.200 *et seq.*

21.

Plaintiff disclosed information that he reasonably believed was evidence of violations of federal law, state law, rule, the city Charter, and regulations, which included, but were not

Page 19—Complaint

limited to, disclosures of mismanagement, abuse of authority, gross waste of funds, and substantial and specific danger to public health and safety. St. Paul threatened to take and took disciplinary action against Plaintiff in retaliation for the disclosures. In addition, St. Paul subjected Plaintiff to a hostile work environment in retaliation for the disclosures. St. Paul also discouraged, restrained, dissuaded, coerced, prevented and otherwise interfered with Plaintiff's disclosures and discussions referenced in paragraph 7 above.

22.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity and right to be free from discrimination or interference with Plaintiff's statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

23.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

24.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

25.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.203.

///

///

Page 20—Complaint

26.

As a result of St. Paul's violations of ORS 659A.203, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

27.

Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**Count III—Violation of ORS 659A.218)**

28.

Plaintiff realleges paragraphs 1-27. According to ORS 659A.218 (1), "The identity of the employee who discloses any of the following shall not be disclosed by a public employer without the written consent of the employee during any investigation of the information provided by the employee, relating to: (a) Matters described in ORS 659A.203 (1)(b)."

29.

St. Paul is a public employer pursuant to ORS 659A.200 *et seq*.

30.

Plaintiff disclosed information relating to matters described in ORS 659A.203 in good faith. Plaintiff's identity was disclosed by St. Paul during an investigation of the information provided by Plaintiff as well as disclosures via Facebook and comments to media. Plaintiff never provided written consent. The actions of St. Paul constitute a violation of ORS 659A.218.

Page 21—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

31.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity and right to be free from discrimination or interference with Plaintiffs statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

32.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

33.

Plaintiff is entitled to equitable relief including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

34.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.218.

35.

As a result of St. Paul's violations of ORS 659A.218, Plaintiff is entitled to equitable relief, economic damages not to exceed $10,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $200,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

Page 22—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

36.

Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**(Count IV—Violation of ORS 659A.230)**

37.

Plaintiff realleges paragraphs 1-36. According to ORS 659A.230, "it is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial."

38.

St. Paul is a public employer pursuant to ORS 659A.230.

39.

Plaintiff engaged in protected activity pursuant to ORS 659A.230, as alleged in paragraph 7 above, when he reported and disclosed evidence of what Plaintiff reasonably believed to be criminal conduct, including, but not limited to, official misconduct. Plaintiff was retaliated against as alleged above for engaging in this protected activity. The actions of St. Paul constitute a violation of ORS 659A.230.

40.

As a result of St. Paul's unlawful employment actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity and right to

Page 23—Complaint

be free from discrimination or interference with Plaintiffs statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

41.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

42.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

43.

Plaintiff requests a declaration by this Court that St. Paul violated ORS 659A.230.

44.

As a result of St. Paul's violations of ORS 659A.230, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

45.

Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

Page 24—Complaint

## SECOND CLAIM AGAINST ST. PAUL—VIOLATION OF 42 U.S.C. § 1983

46.

Plaintiff realleges paragraphs 1-45. 42 U.S.C. § 1983 provides that a party shall be liable when it "subjects, or causes to be subjected, any person of the United States . . . deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

47.

At all times material to this Complaint, the employees and officers of St. Paul acted or purported to act in the performance of official duties under state, county, or municipal law, Charter, ordinances or regulations. St. Paul's violation of Plaintiff's federal rights were attributable to enforcement of St. Paul's "policy, custom, or practice."

48.

St. Paul violated Plaintiff's right to free speech under the First and Fourteenth Amendments. Plaintiff complained about practices and policies as alleged in paragraph 7 above that she reasonably believed to by violations of law. Plaintiff made these complaints as a citizen and regarding what he reasonably believed were violations of state and federal laws and regulations. These are matters of public concern. Plaintiff's statements did not disrupt the efficiency of the office. St. Paul took actions to prohibit Plaintiff from engaging in the speech. St. Paul took adverse employment actions against Plaintiff and discharged his from employment after Plaintiff engaged in this speech. Plaintiff's speech was a substantial and motivating factor for the adverse employment actions.

49.

The above mentioned actions of St. Paul, in interfering with and retaliating against Plaintiff for engaging in protected speech, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief. The violations of 42 U.S.C. § 1983 by St. Paul resulted in Plaintiff

Page 25—Complaint

being deprived of his rights, privileges, or immunities secured by the Constitution and laws of the United States. St. Paul's retaliation towards Plaintiff because he engaged in protected speech, as alleged in the above mentioned paragraphs, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief.

50.

As a result of St. Paul's violations of 42 U.S.C. § 1983, Plaintiff has suffered economic damages in an amount not to exceed $150,000.00, and to be determined by a jury at the time of trial, along with non-economic damages in an amount not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff seeks recovery of all compensatory and punitive damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM AGAINST SCHROEDER AND WALLIS—VIOLATION OF 42 U.S.C. § 1983

51.

Plaintiff realleges paragraphs 1-50. 42 U.S.C. § 1983 provides that a party shall be liable when it "subjects, or causes to be subjected, any person of the United States . . . deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

52.

Defendants, Wallis and Schroeder, acting under color of law, in an individual capacity, misused their powers with a conscious disregard for Plaintiff's constitutional rights. In addition, or in the alternative, their conduct was wanton, reckless, and in disregard of Plaintiff's well-established constitutional rights and they knew or reasonably should have known that their conduct was below the standard prescribed by law herein. Wallis and Schroeder's conduct was

///

Page 26—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

well defined by law and each defendant knew or reasonably should have known that their conduct was below the standard prescribed by law herein.

53.

Wallis and Schroeder violated Plaintiff's right to free speech under the First and Fourteenth Amendments. Plaintiff engaged in protected speech, as alleged above in paragraph 7 above.

54.

Plaintiff's speech regarded matters of public concern. Plaintiff's disclosures were as a citizen and not part of his duties associated with his employment. Plaintiff's statements did not disrupt the efficiency of the office. Wallis and Schroeder took actions to dissuade and prohibit Plaintiff from engaging in the speech as alleged in paragraph 7 above. Wallis and Schroeder took adverse employment actions against Plaintiff in retaliation to Plaintiff engaging in this speech as alleged above. Plaintiff's speech was a substantial and motivating factor for the adverse employment actions.

55.

Wallis and Schroeder's conduct was well defined by law and they knew or reasonably should have known that their conduct was below the standard prescribed by law herein. Wallis and Schroeder misused their powers with a willful and malicious intent to deprive Plaintiff of his right to freedom of speech and cause him grievous injuries thereby. Wallis and Schroeder, in acting to deprive Plaintiff of his right to freedom of speech, acted intentionally, knowingly, willfully, and with gross disregard to Plaintiff's rights.

56.

The actions of Wallis and Schroeder alleged in paragraph 7 above, in interfering with and retaliating against Plaintiff for engaging in protected speech, constitutes a violation of 42 U.S.C.

Page 27—Complaint

§ 1983 for which Plaintiff is entitled to relief. The violations of 42 U.S.C. § 1983 by Wallis and Schroeder resulted in Plaintiff being deprived of his rights, privileges, or immunities secured by the Constitution and laws of the United States. Wallis and Schroeder's actions towards Plaintiff, because he engaged in protected speech, as alleged in the above mentioned paragraphs, constitutes a violation of 42 U.S.C. § 1983 for which Plaintiff is entitled to relief.

57.

As a direct and proximate cause of Wallis and Schroeder's violations of Plaintiff's First and Fourteenth Amendment rights, Plaintiff requests equitable relief, economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial in addition to non-economic damages not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff seeks recovery of all equitable relief, economic damages, and compensatory damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM AGAINST WALLIS AND SCHROEDER—VIOLATION OF ORS 659A.030(1)(g) (Aiding and Abetting)**

58.

Plaintiff realleges paragraphs 1-57. Pursuant to ORS 659A.030(1)(g), it is an unlawful employment practice "for any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter or to attempt to do so." As mayor of St. Paul, Wallis' conduct is imputed to St. Paul by virtue of his position. As legal counsel for St. Paul, Schroeder's conduct is imputed on St. Paul by virtue of his position and contract with St. Paul and/or she is in a position where she can strongly influence the decisions of St. Paul.

///

Page 28—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

59.

As alleged in the paragraph 8 above, Wallis and Schroeder's actions and inactions aided, abetted, incited, compelled, and coerced St. Paul into violating ORS 659A.199, ORS 659A.203, ORS 659A.218, and ORS 659A.230.

60.

As a result of Wallis and Schroeder's unlawful actions, Plaintiff suffered and continues to suffer humiliation, anxiety, distress, and impairment of Plaintiff's personal dignity and right to be free from discrimination or interference with Plaintiff's statutory rights. Plaintiff has also suffered, and continues to suffer, economic damages, including, but not limited to, past and future wages, past and future benefits, and other expenses.

61.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

62.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, future lost earnings and benefits, and other compensatory damages for future pecuniary losses.

63.

Plaintiff requests an order by this Court declaring that Wallis and Schroeder violated ORS 659A.030(1)(g).

64.

As a result of Wallis and Schroeder's violations of ORS 659A.030(1)(g), Plaintiff requests equitable relief, economic damages not to exceed 150,000.00, and to be determined by

Page 29—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

a jury at the time of trial for back pay, front pay, and benefits; and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial.

65.

Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**FIFTH CLAIM AGAINST ST. PAUL—INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS (Special Relationship)**

66.

Plaintiff realleges paragraphs 1-65. Plaintiff had an employer-employee relationship with St. Paul. St. Paul and its agents knew that the aforementioned conduct would cause severe mental or emotional distress or acted despite a high degree of probability that the mental or emotional distress would result.

67.

St. Paul's conduct caused Plaintiff severe mental or emotional distress from the foreseeable highly unpleasant emotional reactions including fright, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

68.

The aforementioned continuing actions of St. Paul consisted of an extraordinary transgression of contemporary standards of civilized conduct toward an employee.

69.

As a result of St. Paul's intentional actions, Plaintiff has suffered non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs and disbursements in bringing this action.

///

Page 30—Complaint

## SIXTH CLAIM AGAINST WALLIS—INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

70.

Plaintiff realleges paragraphs 1-69. Wallis knew that the aforementioned conduct would cause severe mental or emotional distress or acted despite a high degree of probability that the mental or emotional distress would result.

71.

Wallis' conduct caused Plaintiff severe mental or emotional distress from the foreseeable highly unpleasant emotional reactions including fright, grief, shame, humiliation, embarrassment, anger, disappointment, and worry.

72.

The aforementioned continuing actions of Wallis consisted of an extraordinary transgression of the bounds of socially tolerable behavior.

73.

As a result of Wallis' intentional actions, Plaintiff has suffered non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

## SEVENTH CLAIM AGAINST WALLIS AND SCHROEDER—INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

74.

Plaintiff re-alleges paragraphs 1-73. Plaintiff had an economic relationship with the city of St. Paul as an employee.

75.

Wallis and Schroeder were not parties to the contract for employment.

Page 31—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

76.

Wallis and Schroeder intended to interfere with the contract for employment.

77.

Wallis and Schroeder did in fact interfere with the contract through improper means and/or for an improper purpose.

78.

Wallis and Schroeder's interference caused harm to the employment relationship that Plaintiff had with the city of St. Paul.

79.

As a result of Wallis and Schroeder's intentional interference with Plaintiff's economic relations with the city of St. Paul, Plaintiff has suffered economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

## EIGHTH CLAIM AGAINST WALLIS AND SCHROEDER—DEFAMAMTION

80.

Plaintiff re-alleges paragraph 1-79. At all times material herein, Plaintiff was and has been a Public Works Technician; and Plaintiff, by good conduct, industry and ability, had attained an excellent reputation in Plaintiff's profession prior to Wallis and Schroeder's false allegations.

81.

Wallis and Schroeder made allegations of fact that they knew to be false and defamatory publications were intended to convey, and did convey, to the community at large, the impression that Plaintiff caused financial harm to the city, was incompetent, and was unfit for his position.

Page 32—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

82.

These publications were calculated to, and did, hold Plaintiff up to public scorn, hatred, and ridicule; by such publication, Wallis and Schroeder meant, and intended to mean, that Plaintiff caused financial harm to the city, was incompetent, and was unfit for his position, and was so understood by readers and listeners to Wallis and Schroeder's written and oral statements.

83.

Conduct alleged by Wallis and Schroeder had a direct dilatory impact on Plaintiff's business profession and professional reputation.

84.

Wallis published false claims on social media and in the newspaper as alleged above.

85.

Schroeder made false claims and statements in public meetings about Plaintiff as alleged above.

86.

Plaintiff suffered severe emotional distress, and financial harm as a direct and proximate result of Defendant's conduct.

87.

As a result of Wallis and Schroeder's defamation of Plaintiff, Plaintiff has suffered economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

///

///

///

Page 33—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

## NINTH CLAIM AGAINST WALLIS—PUBLIC DISCLOSURE OF PRIVATE FACTS

88.

Plaintiff realleges paragraphs 1-87. Wallis disclosed private facts about Plaintiff to the public generally and the disclosure was in a form of publicity of a highly objectionable kind. The private facts that Wallis disclosed would be highly offensive to a reasonable person and is not of legitimate concern to the public. The manner or purpose of Wallis' conduct in publicly disclosing private facts about Plaintiff was wrongful.

89.

Plaintiff has suffered mental anguish, humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity as a result of the public disclosure of private facts. As a result of Wallis' actions, Plaintiff has suffered economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $250,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

## TENTH CLAIM AGAINST WALLIS—FALSE LIGHT

90.

Plaintiff realleges paragraphs 1-89. Wallis published statements regarding Plaintiff that placed him in a false light that would be highly offensive to a reasonable person. These statements were published with knowledge or reckless disregard as to the truth or falsity of the publicized matter and the false light in which Plaintiff would be placed. Wallis knew that Plaintiff would reasonably be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.

///

///

Page 34—Complaint

Law Office of Larry L. Linder, LLC
3000 Market Street NE, Suite 150
Salem, OR 97301
(T)(503)585-1804 (F) (503)585-1834
info@salememploymentlawyer.com

91.

Plaintiff has suffered mental anguish, humiliation, anxiety, distress, and impairment of Plaintiffs personal dignity as a result of the false light in which he was placed. As a result of Wallis' actions, Plaintiff has suffered economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

## ELEVENTH CLAIM AGAINST ST. PAUL—Violation of ORS 659A.030(1)(f) (Retaliation)

92.

Plaintiff realleges paragraphs 1-91. According to ORS 659A.030(1)(f), it is an unlawful employment practice, "for any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so." Discrimination committed by St. Paul, as alleged above, affected Plaintiff's employment opportunities, compensation, and terms and conditions of employment and is a direct violation of this statute.

93.

Plaintiff suffered from retaliation based on his complaints of sex discrimination. The retaliation Plaintiff suffered includes the allegations in paragraph 8 above in addition to retaliation that includes but is not limited to:

a) St. Paul violated its policy stating that "all complaints of harassment will be investigated promptly and impartially;"

b) Repeated statements by Wallis both privately and in public meetings that Plaintiff's

Page 35—Complaint

complaint was the reason for substantial legal fees being incurred;

c) Repeated refusal to investigate his complaints and then conducting a sham investigation two years later; and

d) Constructively discharging Plaintiff from his employment.

94.

St. Paul's employees and agents' retaliation toward Plaintiff negatively affected his compensation, terms, conditions, and privileges of employment in violation of ORS 659A.030(1)(f).

95.

As a result of Fast's unlawful employment actions, Plaintiff suffered humiliation, anxiety, distress, and impairment of Plaintiff's personal dignity and right to be free from discrimination or interference with Plaintiffs statutory rights. Plaintiff has also suffered economic damages, including, but not limited to, past wages, past benefits, and other expenses.

96.

Plaintiff is entitled to non-economic damages sufficient to compensate Plaintiff for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

97.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay, lost benefits, and other compensatory damages.

98.

Plaintiff requests a declaration by this Court that Fast violated ORS 659A.030(1)(f) in addition to any other equitable relief that this Court deems proper.

///

Page 36—Complaint

99.

As a result of St. Paul's retaliation, Plaintiff is entitled to equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. In accordance with ORS 659A.885 and ORS 20.107, Plaintiff requests and is entitled to his reasonable attorney fees, costs, expert witness fess, and disbursements in this action.

WHEREFORE, Plaintiff requests $4,560,000.00 in damages, in addition to equitable relief, costs, and attorney's fees for his claims against Defendants as delineated below:

1.    **For Plaintiff's First Claim for Relief Against St. Paul:**

**Count I:** Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**Count II:** Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages

Page 37—Complaint

occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**Count III:** Equitable relief, economic damages not to exceed $10,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $200,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

**Count IV:** Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

2.    **For Plaintiff's Second Claim for Relief Against St. Paul:** Economic damages in an amount not to exceed $150,000.00, and to be determined by a jury at the time of trial, along with non-economic damages in an amount not to exceed $1,500,000.00 and to be determined by a jury at the time of trial. Plaintiff seeks recovery of all compensatory and

Page 38—Complaint

punitive damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

3.  **For Plaintiff's Third Claim for Relief Against Wallis and Schroeder:** Economic damages not to exceed $150,000.00, and to be determined by a jury at the time of trial for back pay, front pay, and benefits, non-economic damages not to exceed $1,500,000.00 and to be determined by a jury at the time of trial, and equitable relief. Plaintiff seeks recovery of all equitable relief, economic damages, and compensatory damages provided by law, in addition to reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

4.  **For Plaintiff's Fourth Claim for Relief Against Wallis and Schroeder:** Economic damages not to exceed $150,000.00, and to be determined by a jury at the time of trial for back pay, front pay, and benefits, compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial, and equitable relief. Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

5.  **For Plaintiff's Fifth Claim for Relief Against St. Paul:** Non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs and disbursements in bringing this action.

6.  **For Plaintiff's Sixth Claim for Relief Against Wallis:** Non-economic damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

7.  **For Plaintiff's Seventh Claim for Relief Against Wallis and Schroeder:** Economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this

Page 39—Complaint

action.

8.    **For Plaintiff's Eighth Claim for Relief Against Wallis and Schroeder:** Economic damages in an amount not to exceed $150,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

9.    **For Plaintiff's Ninth Claim for Relief Against Wallis:** Economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $250,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

10.    **For Plaintiff's Tenth Claim for Relief Against Wallis:** Economic damages in an amount not to exceed $10,000.00 and to be determined by a jury at the time of trial, and non-economic damages in an amount not to exceed $500,000.00 and to be determined by a jury at the time of trial. Plaintiff requests his costs in bringing this action.

///

///

///

///

///

///

///

///

///

///

Page 40—Complaint

LAW OFFICE OF LARRY L. LINDER, LLC
3000 MARKET STREET NE, SUITE 150
SALEM, OR 97301
(T)(503)585-1804 (F) (503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

11.    **For Plaintiff's Eleventh Claim for Relief Against St. Paul:** Equitable relief, economic damages not to exceed $150,000.00 and to be determined by a jury at the time of trial for back pay, benefits, and front pay, and compensatory damages not to exceed $1,000,000.00 and to be determined by a jury at the time of trial. To the extent that any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment. Pursuant to ORS 659A.885, Plaintiff is entitled to his reasonable attorney fees, costs, expert witness fees, and disbursements in this action.

DATED this 23rd day of March 2018.

_/s/Larry L. Linder_____
Larry L. Linder        OSB#010724
Of Attorneys for Plaintiff
Law Office of Larry L. Linder, LLC
3000 Market St. NE, Suite 150
Salem, Oregon 97301
Telephone: (503) 585-1804
Facsimile: (503) 585-1834
llinder@salememploymentlawyer.com

Page 41—Complaint